## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| John Doe, <br><br>                 Plaintiff, <br><br> v. <br><br> First Advantage Background Services Corp. and Turn Technologies, Inc., <br><br>                 Defendants. | Civ. Action No.: <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

### COMPLAINT

John Doe ("Plaintiff" or "Mr. Doe") by and through his counsel brings the following Complaint against First Advantage Background Services Corp. ("First Advantage") and Turn Technologies, Inc. ("Turn Technologies") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendants published to Plaintiff's potential employer, which inaccurately reported felony criminal records, which were otherwise ***expunged*** and should not have been reported.

### INTRODUCTION

1.     This is an individual action for damages, costs, and attorney's fees brought against Defendants pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.     Defendants are consumer reporting agencies that compile and maintain files on consumers on a nationwide basis. Each Defendant sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.      Defendants inaccurately reported to Plaintiff's prospective employers felony criminal records that were ***expunged*** and should not have been reported at all. Defendants' reporting is grossly inaccurate and harmful.

4.      Plaintiff took the necessary steps to secure expungement and there are no criminal records pertaining to Plaintiff that are publicly available and eligible for reporting in response to an employment application.

5.      Plaintiff's prospective employers denied Plaintiff's job applications after receiving employment background check reports from Defendants, which included the criminal records despite the fact they have been expunged.

6.      Defendants' inaccurate reporting could have easily been avoided had Defendants performed a cursory review of the widely available public court records from New Castle County, Delaware, regarding the criminal records prior to publishing Plaintiff's reports to his prospective employers.

7.      Had Defendants performed even a cursory review of the public court records, Defendants would have discovered that there are no criminal records pertaining to Plaintiff that are publicly reported and otherwise eligible for including in an employment background report.

8.      Defendants do not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendants' failure to employ reasonable procedures resulted in Plaintiff's reports being grossly inaccurate.

9.      Defendants committed these violations pursuant to their standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal records information.

10.    Defendant Turn Technologies' inaccurate report jeopardized Plaintiff's job application on *at least* one occasion. Defendant Turn Technologies' inaccurate report caused Plaintiff's prospective employer, GoShare, to deny Plaintiff's application for the driving position – mind you after passing all the necessary steps.

11.    Similarly, Defendant First Advantage's inaccurate report jeopardized Plaintiff's job application on at least one occasion. Defendant's inaccurate report caused Plaintiff's prospective employer, Beck Services, to deny Plaintiff's application for the driving position.

12.    As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

13.    As a result of Defendants' conduct, action, and inaction, Plaintiff brings claims against Defendants for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and against Defendant Turn Technologies for failing to conduct a reasonable reinvestigation in violation of the FCRA, 15 U.S.C. § 1681i.

## **PARTIES**

14.    John Doe ("Plaintiff" or "Mr. Doe") is a natural person residing in Bear, Delaware, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

15.    Defendant Turn Technologies, Inc. (Turn Technologies") and is an Illinois corporation doing business throughout the United States, including the State of Delaware and in

this District, and has a principal place of business located at 20 W Kinzie St Ste 17 Chicago, IL, 60654. Turn Technologies can be served at its registered agent, Registered Agent Solutions Inc. located at 3000 Professional Dr. Suite A, Springfield, Illinois 62703.

16.    Defendant First Advantage Background Services corp. ("First Advantage") maintains its headquarters at 1 Concourse Parkway NE, Suite 200, Atlanta, GA 30328, doing business throughout the United States, including the State of Delaware and in this District, and can be served with process by way of its registered agent Corporation Services Company, located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

17.    Among other things, Defendants sell background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote.  These reports are provided in connection with a business transaction initiated by the employer.

18.    Defendants are each a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

**JURISDICTION AND VENUE**

19.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

21.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

22.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

23.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

24.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

25.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the ones Defendants prepared in Plaintiff's name.

26.     The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

27.    In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

28.    The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

29.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

30.    Defendants disregarded their duties under the FCRA with respect to Plaintiff's background check reports.

## DEFENDANTS' ILLEGAL BUSINESS PRACTICES

31.    Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the background check industry.

32.    As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

33.    The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf  ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

34.     Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

35.     Background check companies, like Defendants, collect millions of criminal records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

36.     Given that Defendants are in the business of selling background checks, Defendants should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

37.     Each Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendants to produce reports containing information that is inaccurate and incomplete than it is for Defendants to exert proper quality control over the reports prior to their being provided to Defendants'' customers.

38.     Each Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

39.     Defendants charge their customers the same price for reports that are grossly inaccurate as it does for accurate reports.

40.     Appropriate quality control review of Plaintiff's report would have made clear that Defendants were reporting criminal records that were otherwise expunged and thereby defeating the very purpose of expungement.

41.     As a provider of background check reports, Defendant Turn Technologies should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA").

42.     Defendant First Advantage should also be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA").

43.     PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

**Plaintiff Applies for Employment with GoShare and Beck Services March 2023**

44.     On or about March 13, 2023, Plaintiff applied for full-time employment as Delivery Professional with GoShare.

45.     On or about March 20, 2023, Plaintiff also completed and submitted an employment application via Indeed, a hiring specialized platform, for full-time employment as a Driver with Beck Services.

46.     Upon applying to GoShare, Plaintiff successfully completed the interview process.

47.     Upon applying to Beck Services, Plaintiff successfully completed the interview process.

48.     GoShare extended a job offer to Plaintiff.  Plaintiff also completed GoShare's driver's orientation.

49.     The GoShare job offer was conditioned upon Plaintiff passing a background check ("employment report.").

50.     On or about March 24, 2023, Plaintiff authorized a background check in relation to the GoShare job.

51.     Around that same time, Plaintiff was also offered employment with Beck Services.

**Defendant Turn Technologies Published an Inaccurate Background Check Report to GoShare March 2023**

52.     GoShare contracted with Defendant Turn Technologies to conduct background checks, including criminal background checks, on its prospective employees.

53.     On or about March 24, 2023, GoShare ordered a criminal background check on Plaintiff from Defendant Turn Technologies.

54.     On or about March 29, 2023, in accordance with its standard procedures, Defendant Turn Technologies completed its employment report about Plaintiff and sold the same to GoShare.

55.     Within that employment report, Defendant Turn Technologies published inaccurate information about Plaintiff.

56.     Specifically, within its employment report about Plaintiff, Defendant Turn Technologies reported the pertinent details of the criminal records that have been ***expunged***. Thereby, defeating the entire purpose in seeking and securing an expungement order in the first place.

57.     Specifically, Defendant Turn Technologies' employment report about Plaintiff included a grossly inaccurate information of felony convictions from New Castle County, Delaware, which appeared in the employment report as follows:

| Offense Description | Plea | Crime Type |
| --- | --- | --- |
| POSSESS DRUGS WITHIN 1000 FEET OF SCHOOL | No plea entered | Felony |
| **Offense Day** | **State** | **Disposition** |
| Not provided | DE | GUILTY |
| **Charges Filed Date** | **Sentence** | |
| Not provided | Not provided | |

| Offense Description | Plea | Crime Type |
| --- | --- | --- |
| POSSESS DRUGS WITHIN 1000 FEET OF SCHOOL | No plea entered | Felony |
| Offense Day | State | Disposition |
| Not provided | DE | GUILTY |
| Charges Filed Date | Sentence | |
| Not provided | Not provided | |

| Offense Description | Plea | Crime Type |
| --- | --- | --- |
| CONSPIRACY 2ND DEGREE | No plea entered | Felony |
| Offense Day | State | Disposition |
| Not provided | DE | GUILTY |
| Charges Filed Date | Sentence | |
| Not provided | Not provided | |

| Offense Description | Plea | Crime Type |
| --- | --- | --- |
| MAINTAIN DWELLING - DRUGS | No plea entered | Felony |
| Offense Day | State | Disposition |
| Not provided | DE | GUILTY |
| Charges Filed Date | Sentence | |
| Not provided | Not provided | |

58.     Within that employment report, Defendant Turn Technologies inaccurately published information pertaining to the expunged records.

59.     Defendant Turn Technologies' reporting of the criminal records, despite an expungement order, was unfair and harmful to Plaintiff.

60.     A cursory review of the widely available underlying public court records confirms that Plaintiff successfully completed the requirements necessary to have the records expunged.

61.     The expunged records should never be included in any consumer reports about Plaintiff and were no longer part of the public record.

10

62.    The sole reason the expunged records were reported as belonging to Plaintiff was that Defendant Turn Technologies failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

63.    Had Defendant Turn Technologies followed reasonable procedures, it would have discovered that Plaintiff's felony criminal records were expunged and would not have reported the same.

64.    In preparing and selling a consumer report about Plaintiff, wherein Defendant Turn Technologies published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant Turn Technologies failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**GoShare Denies Plaintiff's Job Application March 2023**

65.    On or about March 29, 2023, Plaintiff was notified by GoShare that his employment application was denied as a direct result of Defendant Turn Technologies' inaccurate reporting of otherwise **expunged** records.

66.    In the same notification received from GoShare, Plaintiff was informed that he could not reply to the adverse action communication.  And further, that new applications would not be accepted, and new background checks would not be performed.

67.    Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked upon reviewing the felony conviction records contained within the subject employment report, which were previously expunged.

68.    Plaintiff contacted GoShare and informed them that his background check report provided by Defendant Turn Technologies was inaccurate.

69.    Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting of the expunged records, in relation to GoShare, but also the impact of the same on his future.

70.    Specifically, Defendant Turn Technologies reported felony convictions that were expunged. There were no public court records reporting the Plaintiff's felony convictions available to Defendant Turn Technologies prior to publishing Plaintiff's employment report to GoShare, but Defendant Turn Technologies failed to obtain or perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant Turn Technologies' Employment Report March 2023**

71.    On March 29, 2023, desperate to secure employment with GoShare and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant Turn Technologies. Plaintiff disputed via telephone and email with Defendant Turn Technologies.

72.    Plaintiff identified himself and provided information to Defendant Turn Technologies to support his dispute.

73.    Plaintiff specifically disputed the inaccurate reporting of **felony** conviction records that were expunged and should not have been reported.

74.    Plaintiff specifically asked Defendant Turn Technologies to investigate and correct its reporting in any employment report about Plaintiff.

**Defendant Turn Technologies Failed to Conduct a Reasonable Reinvestigation and Correct the Employment Report**

75.    On May 10, 2023, Plaintiff received Defendant Turn Technologies' response stating that it had reinvestigated Plaintiff's dispute and determined that its reporting was accurate

and that it would not correct the subject employment report otherwise.

76.     Defendant Turn Technologies failed to issue a corrected employment report to GoShare.

77.     Despite Plaintiff's dispute, Defendant Turn Technologies failed to conduct a reasonable reinvestigation of Plaintiff's March 29, 2023, dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

78.     Because Defendant Turn Technologies failed to issue a corrected employment report, GoShare never received a corrected or accurate report about Plaintiff.

79.     But for Defendant Turn Technologies' inaccurate employment report, Plaintiff's job offer would have proceeded to a hiring action, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant Turn Technologies' erroneous reporting.

80.     Defendant Turn Technologies' false report cost Plaintiff a promising, well-paying job with GoShare.

81.     Plaintiff had anticipated earning between $20,000 to $35,000 per year driving for GoShare.

82.     Plaintiff is the breadwinner of his household and has two young children to support. He was very stressed about his ability to pay rent and provide for his family and offer them a better life.

83.     The injuries suffered by Plaintiff as a direct result of Defendant Turn Technologies' erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant Turn Technologies' conduct would have given rise to causes of action based on defamation and invasion of privacy.

84.      As a result of Defendant Turn Technologies' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

### Defendant First Advantage Published an Inaccurate Background Check Report to Beck Services April 2023

85.      Beck Services contracted with Defendant First Advantage to conduct background checks, including criminal background checks, on its prospective employees.

86.      On or about March 29, 2023, Beck Services ordered a criminal background check on Plaintiff from Defendant First Advantage.

87.      On or about April 3, 2023, in accordance with its standard procedures, Defendant First Advantage completed its employment report about Plaintiff and sold the same to Beck Services.

88.      Within that employment report, Defendant First Advantage published inaccurate information about Plaintiff.

89.      Specifically, within its employment report about Plaintiff, Defendant First Advantage reported the pertinent details of a criminal record that was expunged. Thereby, defeating the entire purpose in seeking and securing an expungement order in the first place.

90.     Specifically, Defendant First Advantage's employment report about Plaintiff included grossly inaccurate information of felony conviction from New Castle County, Delaware, which appeared in the employment report as follows:

| | |
|---|---|
| Case Reference # | 0705030499 |

CID - 252840926                                                                 Page 6 of 1

CID - 252

| | |
|---|---|
| Case Date | 25/May/2007 |
| Name on File | ██████████ |
| Address on File | ██████████ NEWARK, DE |
| DoB on File | XX/XX/XXXX |
| Charge | POSSESSION OF DRUGS WITHIN 1000 FEET OF SCHOOL |
| Charge Type | FELONY |
| Disposition | GUILTY |
| Disposition Date | 19/Nov/2007 |
| Sentence | PROBATION 18 MONTHS; COSTS UNSPECIFIED; PROBATION TERMINATED 05/29/2018; PRISON 2 YEARS / SUSPENDED; SENTENCE TERMS FORFEIT BMW AND $1073 / PROSECUTION FEE |
| Charge | POSSESSION OF DRUGS WITHIN 1000 FEET OF SCHOOL |
| Charge Type | FELONY |
| Disposition | GUILTY |
| Disposition Date | 19/Nov/2007 |
| Sentence | PROBATION TERMINATED 05/29/2018; PROBATION 1 YEAR; PRISON 2 YEARS / SUSPENDED |

91.     Within that employment report, Defendant First Advantage inaccurately published information pertaining to the expunged record.

92.     Defendant First Advantage's reporting of the felony criminal record, despite an expungement order, was inaccurate and reckless.

93.     A cursory review of the widely available public court records confirms that Plaintiff successfully completed the requirements necessary to have the record expunged.

94.     The expunged record should never be included in any consumer reports about Plaintiff and were no longer part of the public record.

95.     The sole reason Defendant First Advantage inaccurately reported the expunged felony criminal record was due the Defendant First Advantage's failure to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

96.     Had Defendant First Advantage followed reasonable procedures, it would have discovered that Plaintiff's felony criminal record was expunged and should not have been reported the same.

97.     In preparing and selling a consumer report about Plaintiff, wherein Defendant First Advantage published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant First Advantage failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Beck Services Denies Plaintiff's Job Application April 2023**

98.     On or about April 3, 2023, Plaintiff was notified by Beck Services that his employment application was denied as a direct result of the Defendant First Advantage's inaccurate reporting of otherwise expunged record.

99.     Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was irritated upon reviewing the felony conviction record contained within the subject employment report, which was already expunged.

100.    Plaintiff messaged Beck Services and explained that the information should not have been reported as it had been expunged, but the employer never answered nor offered to reinstate the job offer.

101.    Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting of the expunged record, in relation to Beck Services, but also the impact of the same on his future.

102.    Specifically, Defendant First Advantage reported a felony conviction that was expunged. There were no public court records reporting the felony criminal records available to Defendant First Advantage prior to publishing Plaintiff's employment report to Beck Services, but Defendant First Advantage failed to obtain or perform even a cursory review of such information.

103.    Plaintiff reasonably believes that due to Defendant First Advantage's inaccurate reporting in the first instance, Beck Services formed a negative opinion about Plaintiff and/or moved on to other candidates.

104.    Defendant First Advantage's false report cost Plaintiff a promising, well-paying job with Beck Services.

105.    The position with Beck Services was full-time and Plaintiff was set to earn between $17 and $28 per hour with a competitive benefits package. More importantly, Plaintiff was excited to provide a better life for his family.

106.    Due to Defendant First Advantage's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek a good employment, Plaintiff was forced to obtain less-paid odd jobs.

107.    The injuries suffered by Plaintiff as a direct result of Defendant First Advantage's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant First Advantage's conduct would have given rise to causes of action based on defamation and invasion of privacy.

108.    As a result of Defendant First Advantage's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)

**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**Defendants Turn Technologies and First Advantage**

109.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

110.    Each Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

111.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

112.    At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

113.    Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

114.    As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and

benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

115.    Defendants willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

116.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**

**Failure to Perform a Reasonable Reinvestigation**
**Defendant Turn Technologies**

117.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

118.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id.*

119.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the

accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

120.    On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendant Turn Technologies and requested that Defendant Turn Technologies correct the inaccurate information in the employment report that is patently inaccurate, misleading, and highly damaging to his, namely, stating that he is a convicted felon, despite to the Expungement Order.

121.    In response to Plaintiff's dispute, Defendant Turn Technologies failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment report and refused to correct the employment report at issue.

122.    Defendant Turn Technologies violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to correct the disputed inaccurate information from the subject employment report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source it has reason to know is unreliable.

123.    As a result of Defendant Turn Technologies' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and

emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

124.    Defendant Turn Technologies willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

125.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant Turn Technologies in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendants negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: June 13, 2023

**GARIBIAN LAW OFFICES, P.C.**

*/s/ Antranig Garibian*

By:    Antranig Garibian, Esq. (DE Bar 4962)
Brandywine Plaza East
1523 Concord Pike, Suite 400
Wilmington, DE 19803
(302) 722-6885
ag@garibianlaw.com
*Attorneys for Plaintiff*